**LYONS & FLOOD, LLP**
The Towers, Suite 206
111 Great Neck Road
Great Neck, NY 11021
(212) 594-2400

*Attorneys for Plaintiff*
*Phoenix Marine Co. DE, LLC*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### NEWARK VICINAGE

| | |
|---|---|
| PHOENIX MARINE CO. DE, LLC, <br><br> Plaintiff, <br><br> -against- <br><br> CARSON CORPORATION and PHILADELPHIA INDEMNITY INSURANCE COMPANY, <br><br> Defendants. | Civil Action No.: 22 Civ. 1968 <br><br> **COMPLAINT** |

Plaintiff PHOENIX MARINE CO. DE, LLC ("PMC"), by its attorneys, Lyons & Flood, LLP, as and for its Complaint against defendants CARSON CORPORATION ("Carson") and PHILADELPHIA INDEMNITY INSURANCE COMPANY ("PIIC"), states as follows:

### PARTIES

1. Plaintiff PMC is a limited liability company organized and existing under the laws of Delaware with a principal place of business at 449 Washington Rd #1, Sayreville, New Jersey 08872, who specializes in marine and underwater construction.

2. The members of PMC are residents of New York and Delaware.

3. Upon information and belief, defendant Carson is a domestic profit corporation organized and existing under the laws of New Jersey with a principal place of business at 171 Route 94, Lafayette, New Jersey 07848, who specializes in performing civil construction and directional drilling services.

4. Upon information and belief, defendant PIIC is an insurance business corporation organized and existing under the laws of Pennsylvania with a principal place of business at One Bala Plaza, 231 St Asaphs Road, Bala Cynwyd, Pennsylvania 19004, and acts as a surety with respect to payment and other bonds in relation to construction projects.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over the claims asserted against Carson under 28 U.S.C. § 1333 in that the claims are admiralty or maritime in nature and therefore within this Court's admiralty or maritime jurisdiction.

6. This Court has supplemental jurisdiction over the claims asserted against PIIC under 28 U.S.C. § 1367(a) in that the claims are asserted in the context of a civil action of which the district courts have original jurisdiction, namely admiralty jurisdiction under 28 U.S.C. § 1333, and the claims asserted against PIIC are so closely related to the claims against Carson that they form part of the same case or controversy under Article III of the United States Constitution.

7. In the alternative, this Court has subject matter jurisdiction over all of the claims asserted in this action under 28 U.S.C. § 1332 due to the diversity of citizenship of the parties and an amount in controversy that exceeds $75,000.00, exclusive of interests and costs.

8. To the extent necessary, plaintiff hereby designates the claims against Carson as admiralty or maritime claims pursuant to Rule 9(h) of the Federal Rules of Civil Procedure.

9. Defendants engage in consistent and systematic contacts with this forum because they regularly conduct business in the State of New Jersey. Therefore, this Court has personal jurisdiction over the defendants.

10. Defendant Carson is subject to the personal jurisdiction of this Court by virtue of its incorporation within the State of New Jersey, as well as its consent to jurisdiction in the dispute resolution clause in the contracts which are the subject of this Complaint.

11. Defendant PIIC is subject to the personal jurisdiction of this Court because it issued a payment bond within the State of New Jersey which related to a construction project within the state and its breach of its obligations under the payment bond caused plaintiff PMC to suffer harm within this state.

12. Venue is proper in this District in that the dispute resolution clause in the contracts which are the subject of this Complaint, provides that "[t]he parties irrevocably consent and submit to the jurisdiction of the United States District Court for District of New Jersey, and waive any objection to the laying of venue or inconvenient forum in any suit, action or proceeding brought in said court to enforce the terms and provisions hereof."

13. In the alternative, venue is proper in this District pursuant to 28 U.S.C. § 1391(a) & (b)(2) in that the defendant Carson resides within this District, and a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

**RELEVANT FACTS**

14. In 2015 Carson was awarded a contract with New Jersey Natural Gas, for a project known as the "Long Beach Island Reinforcement Project" whose stated purpose was "to design and build a submarine crossing at the Long Beach Island, NJ location" and whose objective was "to construct a natural gas submarine crossing (the 'Crossing')."

15. In order to perform its work under the Long Beach Island Reinforcement Project, Carson required the use of two barges for use as work platforms and sought to charter these barges from PMC.

16. Carson and PMC entered into a purchase order dated November 19, 2018, and two charter agreements dated November 14, 2018 (hereinafter referred to collectively as the "Charter Agreement") wherein Carson leased two different barges from PMC for Carson's use in performing horizontal directional drilling services beneath the floor of Manahawkin Bay to install the natural gas pipeline for the Crossing. A true and accurate copy of the Charter Agreement is attached hereto as **Exhibit A**.

17. Under the Charter Agreement, Carson agreed to lease two barges from PMC, the first known as the "Supply Barge Flexi I" (the "Supply Barge") and the second known as the "Phoenix Flexi XII – Jackup Barge" (the "Jackup Barge").

18. Clause 2 of the Charter Agreement provided as follows:

> **Surveys:** To establish the condition of the Vessel as the time of delivery and re-delivery, on-hire and off-hire surveys of the Vessel shall be performed by a competent, qualified independent marine surveyor selected by the parties and all written reports shall be provided to both parties. All survey, dry-docking and repair expenses, if required and incurred, shall be for the account of Charterer. All maintenance items and damages noted in the off-hire survey shall be Charterer's responsibility to repair, regardless of whether such maintenance or damage is considered damage anticipated from the expected use of the Vessel, excepting only such maintenance and damage as Charterer establishes resulted from ordinary wear and tear (as defined below). All maintenance and repairs, other than ordinary wear and tear (as defined below), shall be for the account of Charterer after first obtaining prior written approval of Lessor and the Vessel shall remain on charter until such maintenance and damage repairs are completed.

19.     Pursuant to Clause 3 of the Charter Agreement, Carson agreed that its "acceptance of delivery of the [barges] shall constitute conclusive proof between the parties that Charterer has inspected the [barges] and shall constitute full performance of Lessor's obligations hereunder."

20.     Pursuant to Clause 4 of the Charter Agreement, Carson agreed "to pay interest on past due amounts at a rate of 1.5% per month" and further agreed to "pay all costs of collection and enforcement incurred by Lessor, including its reasonable attorneys' fees and expenses."

21.     Pursuant to Clause 5 of the Charter Agreement, Carson agreed that the barges "shall be operated so that [they] shall not be overloaded or operated in any manner inconsistent with prudent commercial marine practices."

22.     Pursuant to Clause 9 of the Charter Agreement, Carson agreed that it "at [its] sole expense, shall maintain, service and preserve the [barges] in good running order during the charter period and shall repair the [barges] as necessary in accordance with good commercial maintenance practices, ordinary wear and tear excepted (as defined below)."

23.     Pursuant to Clause 13 of the Charter Agreement, Carson agreed "to procure and maintain, at its sole expense, in full force and effect during the time of performance of this Charter, or any extension thereof, insurance on terms and limits set forth in Exhibit A."

24.     Pursuant to Exhibit A of the Charter Agreement, the insurance required to be procured and maintained by Carson included "Hull and Machinery insurance in an amount equal to the full and actual fair market value of the Vessel … with Inchmaree Clause replaced by the Liner Negligence Clause."

25. Clause 18 of the Charter Agreement provided as follows:

> **Redelivery:** At the expiration of the charter period (unless terminated earlier pursuant to Sections 13, 14, 15 or 16), Charterer shall deliver the [barges] to Lessor at the Port of Delivery in the same condition as when delivered and accepted, ordinary wear and tear excepted. Redelivery shall be made at Charterer's expense. The term "ordinary wear and tear" as used herein shall mean depreciation and deterioration due to normal and proper use in the trade, the passage of time, and operation of the elements. The term shall include (a) thinning of paint due to action of time and the elements; (b) scuffing of paint by rubber-tired vehicles and properly fendered tugs; and (c) rust and corrosion due to contact with sea water and air; and (d) fouling of hull by growth of marine organisms. The term shall not include damage to the Vessel's deck, internals and hull that results from Charterer's use or grounding of the [barges].

26. Pursuant to Clause 22(k) of the Charter Agreement, Carson agreed that "[i]f legal action or other proceeding, including arbitration is brought for the enforcement of this Charter, or because of an alleged breach, default of misrepresentation in connection with the provisions hereof, the prevailing party shall be entitled to recover its reasonably attorneys' fees and other costs and expenses incurred in such action or proceeding from the unsuccessful party in addition to any other relief to which it may be entitled."

27. Clause 22(l) of the Charter Agreement provided as follows:

> This Charter shall be constructed and its performance shall be determined, in accordance with the maritime law of the United States insofar as applicable and otherwise according the laws of the State of New Jersey without resort to its conflict of law rules. The parties irrevocably consent and submit to the jurisdiction of the United States District Court for the District of New Jersey, and waive any objection to the laying of venue or inconvenient forum in any suit, action or proceeding brought in said court to enforce the terms and provisions hereof.

28. The two barges were delivered to Little Egg Harbor in seaworthy and good condition, where they were assembled without any incident or complaint from Carson.

29. At or around the time of delivery of the barges to Carson, on-hire surveys of the barges were conducted by a marine surveyor selected by Carson, Captain George Ward of Escape Marine.

30. Captain Ward's on-hire survey report of the Jackup Barge found it to be in "Excellent Condition." A true and accurate copy of Captain Ward's report concerning the on-hire survey of the Jackup Barge is attached hereto as **Exhibit B**.

31. Captain Ward's on-hire survey report no. C011019 of the Supply Barge found it to be in "Excellent Condition," noted that it had been "just refurbished," and recorded the estimated fair market value of the vessel as being $1,140,000, and the estimated replacement cost as being $2,300,000. A true and accurate copy of Captain Ward's report concerning the on-hire survey of the Supply Barge is attached hereto as **Exhibit C**.

32. The Charter Agreement provided that Carson would lease the Supply Barge and the Jackup Barge for a minimum period of six months (from December 2018 to June 3, 2019) at a monthly hire rate of $15,000.00 plus tax of 8.86% for the Supply Barge and a monthly hire rate of $75,000.00 plus tax of 8.86% for the Jackup Barge.

33. By agreement of the parties, and per Clause 21 of the Charter Agreement, the period of the charters was extended while Carson continued to use the barges.

34. While the construction of the Crossing project was temporarily suspended, Carson and PMC agreed that Carson could temporarily relocate the same two barges for use on another project in Virginia known as the "Coastal Virginia Offshore Wind Project" through a written agreement between the parties dated November 6, 2019 (the "Virginia Charter").

35. After the barges were returned to New Jersey from Virginia, Carson and PMC agreed to amend the terms of the Charter Agreement through a written agreement dated May 7, 2020 (the "Charter Amendment"). A true and accurate copy of the Charter Amendment is attached hereto as **Exhibit D**.

36. The Charter Amendment expressly acknowledged that Carson's lease of the barges from PMC had previously included work on the Coastal Virginia Offshore Wind Project and reconciled costs incurred under the Virginia Charter.

37. Beginning in April 2021, Carson notified PMC regarding its intention to redeliver the barges to PMC.

38. In connection with the intended redelivery of the barges, Capt. Ward of Escape Marine (again selected by Carson) conducted off-hire surveys of the two barges on April 9, 2021.

39. Captain Ward's April 11, 2021 report no. C122818 of the off-hire survey of the Jackup Barge noted that the condition of the barge was "Below Average" with damage observed to the deck, the hull side panels, the lift engines, and the hydraulic hoses. A true and accurate copy of Captain Ward's report concerning the off-hire survey of the Jackup Barge is attached hereto as **Exhibit E**.

40. Captain Ward's April 11, 2021 report no. C122819 of the off-hire survey of the Supply Barge noted that the condition of the barge was "Below Average," and that the barge was "returned in unsatisfactory condition" insofar as "around 70% [of] the sections of the barges were sinking" and there were holes in the barge sections observed which allowed penetration by water and sediment. A true and accurate copy of Captain Ward's report concerning the off-hire survey of the Supply Barge is attached hereto as **Exhibit F**.

41. PMC's own marine surveyor subsequently inspected the barges and confirmed that they had suffered extensive damage beyond ordinary wear and tear.

42. Due to their damaged condition, which rendered them unsuitable for use, the barges were unable to be redelivered to Brooklyn, New York as required under the Charter Agreement.

43. Both the Jackup Barge and Supply Barge required extensive repairs before they could be returned to service, in September 2021 and November 2021 respectively.

**AS AND FOR A FIRST CAUSE OF ACTION – CARSON'S BREACH OF CONTRACT**

44. Pursuant to the Charter Agreement entered into between the parties, Carson owed contractual duties to PMC to: (a) only operate the barges consistently with prudent commercial marine practices; (b) maintain, service and preserve the barges in good running order and to repair them as necessary in accordance with good commercial maintenance practices; (c) repair all maintenance items and damages noted in the off-hire survey of the barges; (d) redeliver the barges at the port of delivery in the same condition as when delivered and accepted; and (e) procure and maintain insurance on the barges, including Hull and Machinery insurance with a Liner Negligence Clause.

45. In breach of its obligations under the Charter Agreement, Carson failed to properly operate, maintain, service, and repair the Supply Barge and the Jackup Barge, causing them to be damaged beyond ordinary wear and tear and rendering them unusable by PMC.

46. In breach of its obligations under the Charter Agreement, Carson failed to pay the costs of repairing all maintenance items and damages noted in the off-hire surveys of the Supply Barge and the Jackup Barge.

47. In breach of its obligations under the Charter Agreement, Carson failed to redeliver the Supply Barge and the Jackup Barge in the same condition as when delivered and accepted.

48. In breach of its obligations under the Charter Agreement, Carson failed to procure insurance for the benefit of PMC, covering damage to the Supply Barge and the Jackup Barge resulting from Carson's own negligence.

49. In breach of its obligations under the Charter Agreement, Carson failed to pay hire due and owing to PMC for the charter of the Supply Barge and the Jackup Barge.

50. PMC made demand on Carson for payment of outstanding accrued hire, which Carson failed or refused to pay.

51. PMC made demand on Carson for the costs of repairing the damage to the barges, which Carson failed or refused to pay.

52. Because the conditions for termination of the Charter Agreement have not been met, charter hire is still payable and accruing daily.

53. The refusal or failure of Carson to pay charter hire until termination of the Charter Agreement is a breach of the Charter Agreement.

54. Because the Charter Agreement specifically provides for an award of attorneys' fees incurred in its enforcement, and because Carson failed or refused to comply with its terms, PMC is entitled to an award of attorneys' fees arising from Carson's breach of the Charter Agreement.

55. As a direct and proximate result of Carson's breach of the Charter Agreement, PMC has suffered damages.

**AS AND FOR A SECOND CAUSE OF ACTION – PIIC'S BREACH OF CONTRACT**

56. On or about December 15, 2015, PIIC, in its capacity as a surety, issued a Payment Bond (no. PB00459500006) in the total amount of $11,116,370.00 with respect to the Long Beach Island Reinforcement Project, listing Carson as the principal. A true and accurate copy of the Payment Bond is attached hereto as **Exhibit G**.

57. The Payment Bond permits any "claimant," defined as "[a]n individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Construction Contract" to send a claim to the surety, upon which the surety will send an answer to the claimant and pay or arrange for payment of any undisputed amounts.

58. PMC qualifies as a claimant under the Payment Bond, and PMC otherwise discharged all other responsibilities, obligations and conditions prerequisite under the Payment Bond.

59. On or about August 2, 2021, PMC sent a notice of claim against the Payment Bond to PIIC. A true and accurate copy of PMC's notice of claim is attached hereto as **Exhibit H**.

60. On or about September 29, 2021, PIIC sent an answer to PMC's notice of claim, rejecting PMC's claims. A true and accurate copy of PIIC's answer to notice of claim is attached hereto as **Exhibit I**.

61. PMC's claims pursuant to the Payment Bond are proper and supported by Carson's nonpayment of the amounts claimed by PMC.

62. Despite demands, PIIC has failed to issue payments to PMC under the Payment Bond and thereby breached the terms of the Payment Bond.

63. As a direct and proximate result of PIIC's breach of the Payment Bond, PMC has suffered damages.

**AS AND FOR A THIRD CAUSE OF ACTION – CARSON'S BREACH OF BAILMENT**

64. By virtue of its possession, custody and control of the Supply Barge and Jackup Barge, Carson was acting as a bailee of these barges and in its own capacity or through its contractors, agents, servants, or sub-bailees, owed statutory duties to PMC to safely and properly keep, care for and deliver these barges back to PMC at the conclusion of the Charter Agreement in the same good order and condition as at the time Carson first accepted custody and control of the barges.

65. Carson breached its duties and obligations as a bailee by failing to deliver said barges to PMC at the conclusion of the Charter Agreement in the same good order and condition as at the time Carson first accepted custody and control of the barges.

66. As a direct and proximate result of the breach of bailment by Carson, PMC has suffered damages.

**AS AND FOR A FOURTH CAUSE OF ACTION – CARSON'S NEGLIGENCE**

67. As the bareboat charterer of the Supply Barge and Jackup Barge, Carson owed a duty to PMC to properly man, operate, maintain and repair these barges and to otherwise exercise due diligence to ensure that these barges remained seaworthy and fit for their intended purpose during the period when they were in Carson's possession, custody or control.

68. During the period when the Supply Barge and Jackup Barge were in Carson's possession, custody or control, Carson negligently manned, operated, maintained and repaired these barges and furthermore failed to exercise due diligence to ensure that these barges remained seaworthy and fit for their intended purpose.

69. As a result of Carson's aforesaid negligence, the Supply Barge and Jackup Barge suffered damage beyond ordinary wear and tear, and thereby PMC sustained losses.

70. The losses sustained by PMC were caused, in whole or in part, by the negligence and fault of Carson and/or its agents, representatives and independent contractors for whose acts and omissions it was responsible, and which were within the privity and knowledge of Carson and/or its officers, directors, managers, supervisors, superintendents and/or such persons whose privity and knowledge are imputable to Carson.

71. By reason of the foregoing PMC has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to include:

    a. Unpaid and already accrued charter hire for the Supply Barge and Jackup Barge of $535,838.00;

    b. Unpaid charter hire on the Supply Barge at the rate of $536.84 per day, exclusive of interest, fees, costs, and hire continuing to accrue daily;

    c. Unpaid charter hire on the Jackup Barge at the rate of $2,684.22 per day, exclusive of interest, fees, costs, and hire continuing to accrue daily;

    d. $214,465.00 in costs to repair the Supply Barge;

    e. $241,924.00 in costs to repair the Jackup Barge;

    f. Extra expenses, losses, direct costs, and labor;

    g. Attorneys' fees and costs as provided for in the Charter Agreement and/or Payment Bond; and

    h. Any other damages or relief as the facts and equity may warrant.

## AS AND FOR A FIFTH CAUSE OF ACTION – DECLARATORY JUDGMENT

72. The instant action involves an actual controversy between the parties and within the jurisdiction of this Court. Accordingly, PMC seeks relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, whereby PMC asks this Court to declare that Carson is in breach of the Charter Agreement and that PIIC is in breach of the Payment Bond. PMC requests under Fed. R. Civ. P. 57, that the Court order a speedy hearing of this declaratory judgment action.

**WHEREFORE**, plaintiff prays:

a. That process in due form of law may issue against defendants citing them to appear and answer all and singular the matters aforesaid;

b. That judgment may be entered in favor of plaintiff against defendants for the amount of plaintiff's damages in the amount of at least $1,000,000.00, together with interest, costs and the disbursements of this action;

c. That judgment may be issued pursuant to 28 U.S.C. § 2201 declaring that defendants are in breach of contract and that plaintiff is entitled to reimbursement for all damages which it has incurred as a result of defendants' breach of contract; and

d. That this Court grant to plaintiff such other and further relief as may be just and proper.

Dated: April 6, 2022

LYONS & FLOOD, LLP
Attorneys for Plaintiff
PHOENIX MARINE CO. DE, LLC

By: _____
Jon Werner, Esq.
The Towers, Suite 106
111 Great Neck Road
Great Neck, NY 11021
(212) 594-2400
jwerner@lyons-flood.com

U:\FLOODDOC\2777001\Legal\Complaint.doc